Ralph P. Guenther, Esq. (SBN 124245)
DOUGHERTY & GUENTHER, APC
601 S. Main Street
Salinas, California 93901
(831) 783-3440
rguenther@montereylaw.com

Attorney for Pauls Valley National Bank

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re:                                              Case No. 17-50197HLB

    Paul Fairfax Soares,                     Chapter 13

                  Debtor.           R.S. NO.: RPG - 43

                                                        /   **Hearing Information**:

Date: May 18, 2017
Time: 1:00 p.m.
Judge: Hon. Hannah L. Blumenstiel
450 Golden Gate Ave., 16th Floor
Courtroom 19
San Francisco, California

**MOTION TO CONFIRM THAT AUTOMATIC STAY IS NOT IN EFFECT, OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

Pauls Valley National Bank ("PVNB") respectfully moves the Court pursuant to 11 U.S.C. §§ 105(a) and 362(d)(1) and Local Bankruptcy Rule 4001-1 for an order confirming that no stay is in effect for the purpose of allowing PVNB to proceed with its Oklahoma foreclosure action against Debtor and Funchal Minerals Limited, an Oklahoma corporation doing business as OK Minerals Limited, to foreclose the interest in certain real property located in Garvin County, Oklahoma.

1

In re Soares; Case No: 17-50197                                      Motion for Comfort Order or RFS
Case: 17-50197    Doc# 27    Filed: 05/08/17    Entered: 05/08/17 17:26:19    Page 1 of 10

PVNB moves the Court for such an order due to the Debtor's contentions that his Chapter 13 proceeding stays PVNB's collection actions against Funchal Minerals Limited, an Oklahoma corporation doing business as OK Minerals Limited, even though PVNB's Oklahoma foreclosure action concerns corporate debts and not consumer debts and the recent assignment by Funchal Minerals Limited to Debtor of its interest in the real property located in Garvin County Oklahoma. PVNB does not believe its security interest or pending Oklahoma action is subject to the automatic stay. PVNB further seeks waiver of the 14 day stay of FRBP Rule 4001(a)(3).

## I. JURISDICTION AND VENUE

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

On May 22, 2015, Paul Fairfax Soares ("Debtor") executed a promissory note (Loan No. 101609) as president of Funchal Minerals Limited, an Oklahoma corporation doing business as OK Minerals Limited, ("Funchal") in the original principal amount of $75,104.00. See, Funchal's promissory note and corporate resolution to borrow attached as Exhibit A to Declaration of Kirk Dunham filed in support of this Motion.

To secure the payment of the indebtedness evidenced by Loan No. 101609, Funchal executed and delivered to PVNB a mortgage concerning the following described real property located in Garvin County, Oklahoma:

> The W½ SW¼ and N½ SE¼ SW¼ of Section 23, Township 4 North, Range 2 East, Garvin County, Oklahoma, containing 100 acres m.o.l;
> The NE¼ NE¼ NW¼ and SE¼ SE¼ NW¼ and W½ E½ NW¼ and NW¼ NW¼ and N½ SW¼ NW¼ and SE¼ SW¼ NW¼ of Section 26, Township 4 North, Range 2 East, containing 130 acres m.o.l.; and
> The NE¼ SE¼ NW¼ and SE¼ NE¼ NW¼ of Section 26, Township 4 North, Range 2 East, Garvin County, Oklahoma, containing 20 acres m.o.l.
> (the "Subject Property").

To further secure the payment of the indebtedness evidenced by Loan No. 101609, and as part and parcel to the mortgage described above, Funchal pledged to PVNB all its equipment, accounts, contract rights, and fixtures associated with the Subject Property as more particularly

described in the mortgage and the UCC-1 financing statement. Accordingly, PVNB is the holder of a duly perfected security interest in the Subject Property by virtue of the aforementioned mortgage and financing statement executed and delivered to PVNB by Funchal.  A copy of the mortgage is attached as Exhibit B to the Declaration of Kirk Dunham.  A copy of the UCC-1 Financing Statement is attached as Exhibit C to the Declaration of Kirk Dunham.

Funchal is in default in that it has failed to make payments on the underlying promissory note (Loan No. 101609) secured by the Subject Property.

On January 6, 2017, PVNB filed suit against Funchal in the District Court of Garvin County, State of Oklahoma, styled as *Pauls Valley National Bank v. Funchal Minerals Limited, an Oklahoma Corporation, d/b/a OK Minerals Limited; Paul F. Soares; and Arrowhead Energy, Inc.*, Case No. CJ-2017-6. A copy of the Petition is attached as Exhibit E to the Declaration of Kirk Dunham.  The Debtor was originally named in the petition as a result of the Debtor's execution and delivery of a personal guaranty agreement to PVNB; however, in light of the Debtor's present Chapter 13 bankruptcy proceeding PVNB has dismissed the Debtor from the aforementioned Oklahoma foreclosure action.

Debtor commenced his Chapter 13 bankruptcy case on January 30, 2017, and took the position that PVNB was enjoined by the Automatic Stay from pursuing its rights against the Subject Property in connection with the referenced law suit.

On or about April 19, 2017, Debtor recorded an Assignment, Bill of Sale and Conveyance (the "Assignment") which purported to assign the interest of Funchal in the Subject Property to Debtor.  A copy of the Assignment is attached as Exhibit 1 to the Request for Judicial Notice filed in support of this Motion.

As of April 13, 2017, the outstanding balance due with regard to the promissory note (Loan No. 101609) is $56,436.87, with an interest accrual of $11.0881 per day. As of April 13, 2017, Funchal is 203 days past-due in making the payments called for and in arrears in the amount of $18,968.78.  A copy of PVNB's Affidavit of Statement of Account is attached as Exhibit D to the Declaration of Kirk Dunham.

For the reasons discussed herein, relief should be granted to allow PVNB to proceed with

lawsuit against Funchal and the Subject Property.

### III. POINTS AND AUTHORITIES

The Court has the authority pursuant to 11 U.S.C. § 105 of the Code to grant relief from the automatic stay imposed by 11 U.S.C. § 362(a) for cause. *See* 11 U.S.C. § 362(d)(1).

**A.     The Subject Property Was Owned by Funchal Minerals Limited.**[1]

Cause exists for this Court to enter an order determining that the automatic stay does not apply to the Subject Property pledged to secure Funchal's indebtedness because the present Chapter 13 proceeding is one concerning the individual debts of the Debtor. Pursuant to the Code, a Chapter 13 proceeding does not embrace the debts of a corporate entity. *See In re McCormick*, 381 B.R. 594, 597-598 (Bankr. S.D.N.Y. 2008) (holding that 11 U.S.C. § 109(e) limits the eligibility of debtors entitled to file under chapter 13 to individuals with regular income, and does not apply to limited liability companies because a limited liability company is not considered to be an "individual" under the Code.); and *In re Loughnane*, 28 B.R. 940, 942 (Bankr. D. Colo. 1983) (holding that the automatic stay imposed by the initiation of a Chapter 13 proceeding did not extend to a debtor's corporate entity, despite the debtor's ownership of 100% of the corporate entity's stock, because only individuals with regular income may be a debtor in a Chapter 13 proceeding pursuant to 11 U.S.C. § 109(a)).

Moreover, a Chapter 13 debtor who also owns an interest in a corporate entity would have a Chapter 13 bankruptcy estate which included the intangible personal property rights represented by the stock certificate, and the bankruptcy estate would exclude those assets belonging to the corporate entity. *See In re Loughnane*, 28 B.R. 940, 942 (Bankr. D. Colo. 1983).  Hence, Debtor's estate does not encompass assets held in the name of Funchal.

**B.     The Assignment Was Not Valid**.

The Assignment consists of seven pages. The date on the bottom of the first page has a date

---

[1] PVNB asserts that the assignment was invalid. Notwithstanding, for purposes of this Motion, PVNB asserts that even if the assignment were valid, PVNB is nevertheless entitled to the requested relief.

of April 18, 2016. There is no acknowledgment for that date. The third and fourth pages are copies of a corrective assignment at Book 2104, Page 724-725. This instrument is dated September 12, 2008 and acknowledged May 18, 2015. The fifth page is a one page assignment dated September 16, 2008 and acknowledged September 16, 2008, but used an individual acknowledgment.

Because the assignment does not contain a valid acknowledgment, it should not have been accepted for recording. The Assignment is therefore ineffective to provide notice to third parties.

There are two statutes, enacted in 1910 by the Oklahoma legislature, which, together, serve as the Recording Act for the State of Oklahoma:

> 16 O.S. § 15: Except as hereinafter provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage, or contract relating to real estate as between the parties thereto; but <u>no deed</u>, mortgage, contract, bond, lease, or other instrument relating to real estate other than a lease for a period not exceeding one (1) year and accompanied by actual possession, <u>shall be valid as against third persons unless</u> acknowledged and <u>recorded as herein provided</u>. No judgment lien shall be binding against third persons unless the judgment lien holder has filed his judgment in the office of the county clerk as provided by and in accordance with Section 706 of Title 12 of the Oklahoma Statutes. (emphasis added)

And

> 16 O.S. § 16: <u>Every conveyance of real property</u> acknowledged or approved, certified and <u>recorded as prescribed by law</u> from the time it is filed with the register of deeds for record <u>is constructive notice</u> of the contents thereof <u>to subsequent purchasers</u>, mortgagees, encumbrancers or creditors. (emphasis added)

These two statutes have remained unchanged since 1910, except for minor unrelated changes to 16 O.S. § 16 to reflect new procedures to create judgment liens.

In a Tract Index system, like the one in place in Oklahoma, the statutes, 19 O.S. § 298 (A) expressly provide:

> Every county clerk in this state shall require that the mandated of the Legislature be complied with, as expressed in Sections 287 and 291 of this title, and for that purpose, every instrument offered which may be accepted by the county clerk for recording, affecting specific real property whether the conveyance, shall by its own terms describe the property by its legal description, and provide such information as is necessary for indexing as required in Sections 287 and 291 of this title, ...

A 2010 bankruptcy case in the Northern District of Texas, Dallas Division (interpreting Oklahoma Law) is instructive about the need for a specific legal description. In *In re Cornerstone E&P Co., L.P.[1]* the court held that under Oklahoma law a "blanket security agreement" on oil and

5

In re Soares; Case No: 17-50197                                                                                           Motion for Comfort Order or RFS
Case: 17-50197   Doc# 27   Filed: 05/08/17   Entered: 05/08/17 17:26:19   Page 5 of 10

gas leases located in Oklahoma, did not provide constructive notice due to the absence of specific legal descriptions in the subject mortgage. It stated:

> By the plain language of the Oklahoma governing statute, a recorded conveyance provides constructive notice when it is "recorded as prescribed by law." 16 Okla. Stat. § 16. 19 Okla. Stat. § 298 requires that every document offered for recording "shall by its own terms describe the property by its specific legal description, and provide such information as is necessary for indexing as required in Sections 287 and 291 of this title...." 19 Okla. Stat. § 298. In turn, §§ 287 and 291 direct the clerk of each county to keep a grantor-grantee index and a tract index, respectively. 19 Okla. Stat. §§ 287, 291. Thus, by the terms of the statute, a deed may only be "recorded as prescribed by law" if it contains a specific legal description and provides sufficient information for indexing in both the grantor-grantee index and the tract index. The Court concludes that the language of the statute is unambiguous and must be given the effect of its plain meeting. Thus, as a matter of law, to be "recorded as prescribed by law" and thereby constitute constructive notice solely by virtue of the fact of its filing, a conveyance must provide a specific legal description sufficient for indexing in both the county grantor-grantee index and the county tract index.
>
> As noted previously, 16 Okla. Stat. § 16 expressly provides that "[e]very conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors." And, as discussed above, because the Oklahoma Mortgage cannot be recorded "as prescribed by law" as to the Oklahoma Blanket Leases because it contains no specific property descriptions for the Oklahoma Blanket Leases sufficient for indexing in the applicable tract index, the recording of the Oklahoma Mortgage, standing alone, constitutes no constructive notice that of Union Bank's lien on the Blanket Leases. Stated another way, 16 Okla. Stat. § 16 and 19 Okla. § 298, as a matter of law, impute no knowledge of the county property records to the Plaintiffs with respect to the Oklahoma Blanket Leases. Even when recorded, documents that do not satisfy all of the relevant statutory requirements do not constitute constructive notice simply because of their filing. See Amarex, Inc. V. El Paso Natural Gas Co., 1987 OK 48, 772 P.2d 905, 909 (Okla.1987) (recorded instrument not signed by any person or entity in the chain of title does not constitute constructive notice). (emphasis added). Id. at 850.\

The above analysis was primarily dealing with a missing legal description, but the same argument applies to a document missing the required acknowledgment. For these reasons, the Assignment is invalid and does not effectively transfer the Subject Property from Funchal to Debtor.

**C.    Even If The Assignment Were Valid, the Subject Property Did Not Become Property of the Estate.**

Apparently, Debtor believes that the Subject Property would be protected by the Automatic Stay once it was assigned to Debtor. Debtor's assumption is incorrect. Bankruptcy Code section 541 defines what is property of the estate. Under section 541(a)(1), "property of the estate" includes

"all legal or equitable interests of the debtor in property as of the commencement of the case." Under section 541(a)(7), it also includes "[a]ny interest in property that the estate acquires after the commencement of the case." "The party seeking to include property in the estate bears the burden of showing that the item is property of the estate." *Seaver v. Klein-Swanson (In re Klein-Swanson)* (8th Cir. BAP 2013) 488 BR 628, 633.

Even assuming that Debtor acquired an interest in the Subject Property by way of the Assignment, the Subject Property did not become property of the estate under "section 541(a)(7) because that provision is limited to property interests that are themselves traceable to 'property of the estate' or generated in the normal course of debtor's business." *In re TMT Procurement Corp.* (5th Cir 2014) 764 F.3d 512, 524-525 (citing *In re McLain* (5th Cir. 2008) 516 F.3d 301.)

In *In re Neidorf,* the Bankruptcy Appellate Panel for the Ninth Circuit, citing *In re TMT Procurement Corp.* held that "for the after-acquired interest to be considered property of the estate under section 541(a)(7), the interest (1) must be created with or by property of the estate; (2) acquired in the estate's normal course of business; or (3) otherwise traceable to or arise out of any prepetition interest included in the bankruptcy estate." (9th Cir. BAP) 534 BR 369. Here, because the Subject Property was owned by Funchal, Debtor cannot satisfy the first or third elements listed by the BAP in the *Neidorf* decision. Moreover, the Assignment states the "[t]he purpose of this assignment is to distribute all of the remaining assets and any and all liabilities, including but not limited to contingent liabilities of the Assignor, to the Assignee in order to finalize the dissolution." It stands to reason that actions taken "in order to finalize the dissolution" would not be in the ordinary course of business. Therefore, Debtor cannot satisfy the second element.

For these reasons, the Court should find that the Assignment did not result in the Subject Property becoming property of the bankruptcy estate.

**D. Cause Exists To Grant Relief From the Automatic Stay.**

Bankruptcy Code section 362(d)(1) provides, in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

(1) *For cause*, including the lack of adequate protection of an interest in

7

In re Soares; Case No: 17-50197

Motion for Comfort Order or RFS

Case: 17-50197    Doc# 27    Filed: 05/08/17    Entered: 05/08/17 17:26:19    Page 7 of 10

property of such party in interest. . . (Emphasis added).

///

///

### 1. Debtor Has Made No Payments To PVNB.

Cause includes a debtor's lack of equity in a property, a debtor's failure to make post-petition mortgage payments, and inadequate protection of a creditor's interest in the property. *In re Ellis* (9th Cir. BAP 1985) 60 BR 432.

The last payment received from Debtor was on September 12, 2016. See, PVNB's Affidavit of Statement of Account attached as Exhibit D to the Declaration of Kirk Dunham. Failure to make post-petition payments to PVNB constitutes "cause" to terminate the automatic stay. Based upon the foregoing, PVNB is entitled to relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(1).

### 2. Debtor Filed This Bankruptcy To Avoid Another Court's Jurisdiction.

The Ninth Circuit has stated in dictum that a debtor's *improper* use of bankruptcy "as a refuge from the jurisdiction of another court" (i.e., filing an "illegitimate" bankruptcy petition, "such as one based on misrepresentations," to trigger the automatic stay against commencement or continuation of judicial action against the debtor) may constitute "cause" for relief from the automatic stay. See, *In re Sherman* (9th Cir. 2007) 491 F3d 948, 970-972.

Here, the Court should recall that Debtor took the position that he was entitled to a temporary restraining order as to the Subject Property in an adversary proceeding filed against Arrowhead Energy, Inc. See, Adversary Proceeding No. 17-5036. The Court issued its Order Denying Plaintiff's Emergency Motion For A Temporary Restraining Order and Subsequent Permanent Injunction [Doc# 25] on April 17, 2017. Two days later, Debtor recorded the Assignment of the Subject Property with the Garvin County Clerk.

Debtor's actions smack of bad faith and an improper use of the bankruptcy. This constitutes additional cause for relief from the automatic stay.

### 3. Debtor Is Ineligible For Chapter 13 Relief.

"Cause" may exist to lift the automatic stay before confirmation where the debtor is not

eligible for Chapter 13 relief.  See, *In re Wong* (Bankr. CD CA 1983) 30 BR 87, 88 (stay lifted where (among other things) debtor was ineligible for Chapter 13 because debtor exceeded secured debt limitation).

Here, Debtor exceeds the secured debt limitation.  In his prior Chapter 11 case, Case No. 09-55986, Capital One, N.A. filed a secured proof of claim in the amount of $1,547,604.76 for a loan secured by the real property located at 416 Drake Avenue in Monterey.  A copy of Claim No. 8-1 is attached as Exhibit 2 to the Request for Judicial Notice filed in support of this Motion.

Capital One, N.A. filed an Objection to Confirmation in this case.  A copy of Objection to Confirmation and Supplemental Declaration in Support of Objection to Proposed Chapter 13 Plan and Confirmation Thereof is attached as Exhibit 3 to the Request for Judicial Notice filed in support of this Motion.  Incredibly, Debtor's Schedules do not list a secured claim in favor of Capital One, N.A.  Notwithstanding, Debtor's First Amended Plan provides for Capital One, N.A. as a secured creditor with an estimated claim amount of $34,000.00.

PVNB alleges that Debtor's <u>secured</u> obligation to Capital One, N.A. is in excess of the secured debt limit for Chapter 13.  Debtor is therefore ineligible for Chapter 13, which is "cause" to grant relief from stay.

## VI.  CONCLUSION

WHEREFORE, PVNB prays that the Court enter an Order determining that the automatic stay imposed by the filing of this Chapter 13 proceeding does not prevent PVNB from foreclosing its security interests pledged by Funchal as therein provided by Oklahoma law, and that PVNB may therefore proceed against the corporate entity known as Funchal.  In the alternative, PVNB prays that the Court make a finding that "cause" exists to terminate the automatic stay to allow PVNB to foreclose its security interests pledged by Funchal as therein provided by Oklahoma law, and that PVNB may therefore proceed against either the corporate entity known as Funchal or against Debtor.

Date: May 8, 2017                                    DOUGHERTY & GUENTHER, APC

| | |
|---|---|
| 1 | */s/ Ralph P. Guenther* |
| 2 | Ralph P. Guenther, Esq., attorney for Pauls Valley National Bank |